May it please the Court, Curtis Pearce on behalf of Petitioner Javier Perez-Palafox. This case raises many interesting issues. There's the very narrow issue of the difference between a conclusion and a fact. One of the arguments raised on appeal is that the Board of Immigration Appeals engaged in improper fact-finding. And it would appear that the Board is trying to get around this by saying, no, we agree with the judge's facts, we just disagree with her conclusion. But if you look at the record AR-80, and of course the Board's regulations are that they apply the clearly erroneous standard to reverse a judge. This is on the AR-80. The immigration judge who they're reversing mentions that the court finds that the police report is insufficient to support a finding the respondent was involved in drug trafficking. And further down, the judge wrote, the court finds that the arresting officer's statement as to the packaging of the drugs is not determinative of respondent's intended use of the drugs, as it appears in the respondent's testimony. And basically what happened in this case is, as indicated by the briefing, the Board of Immigration Appeals essentially used the conjecture and opinion of a police officer as a basis to deport the petitioner. He was not convicted of a particularly serious crime. He was not convicted of sales. He was convicted of transport. And the Board of Immigration Appeals, relying on the case of Anaya, says we can use any reliable information. And they used the opinion and conjecture of the police officer. And, of course, Anaya, which was a Ninth Circuit case, did mention they could use all reliable information. But the reliable information used in that case was the petitioner's testimony. It wasn't a police report. It's another issue. Now, let me make sure I understand the argument. Yes, sir. Stated quickly, it is that the IJ finds, as a matter of fact, that he had these drugs for personal use only. Yes, Your Honor. And the BIA says, well, we're not going to interfere with the factual finding. But then, in fact, that's exactly what they do. Yes. That's your argument. That's my argument. They're making a fine line. They're splitting hairs. What was the factual finding that the BIA made that was different than the IJ made? The board found that the petitioner was involved in the sales, based on the police officer's report, because he had some drug paraphernalia. But isn't that a conclusion made from the facts, as opposed to a factual finding? That's what the board is contending. Right. But how is that a factual finding? Well, they're getting into what was the petitioner doing with this paraphernalia. And the immigration judge found that the immigration judge accepted his testimony, finding that it was inconsistent with sales, which also raises another point about the regulations, which state that the Stick to this point. Okay. Stick to this point. Okay. This point is, again, the judge found that It's unquestionable that there were a number of glycine envelopes in his pocket. That's correct. It's unquestionable that he used glycine envelopes to fill with a small amount of drug to sell. Well, to sell, that's the question. The immigration judge didn't know what to sell. He was apprehended before he sold, so it's a question. What was in his mind? Right. And what we have is glycine envelopes, several types of drugs, and paraphernalia. And those were found and not disputed. So isn't Judge Rawlinson right that all we have is a different conclusion from the same set of facts? Yes and no. I would argue that he gets at that conclusion that he has to engage in some factual finding. Specifically, what was inside the mind of this individual. The intent, right. An intent was formed from exactly the same facts, depending on the conclusion. No facts changed. Immigration judge drew one set of inferences from the same set of facts. BIA drew a different inference from the same set of facts. In effect, weighing it differently. That's one way of looking at it. But I would also argue that the board, according to its regulations, should pay deference to the credibility determination of the judge. Let me ask you this. Is a finding by the I.J. that these drugs were for personal use only a factual finding? I would contend it was. The immigration judge looked at everything and said. I mean, that's what the I.J. said. The I.J. found that these were for personal use only. Right. And it appears that the BIA disagrees with that. That's correct. I tell a jury. I'll go back to my role as a district judge. I tell a jury that the inferences are for you to find based on reasonable and logical inferences that you draw from the facts. Right. And once the jury does that, that's a fact. But really what also has happened is courts of appeals sometimes get involved and say those facts should be weighed in a different way. And what we have here with the BIA is they're making, in effect, a value judgment that if you have a bunch of glycine envelopes and various kinds of drugs and paraphernalia, you have everything that's involved in trafficking, and therefore we can classify this as a trafficking offense. And that's a value judgment that the BIA should be given deference for. Right, but do we want to, again, and they're basing that on the. . . Do we want to? I don't know if we want to, but we have to. Is it permissible to deport someone based on the conjecture of the police officer? He wasn't convicted of trafficking. He was convicted of transportation. I take it that the BIA is unwilling to deport someone, or rather I'll say it this way, is unwilling to find that it is a particularly serious crime if the person has drugs for personal use only. I think that's a pretty clear inference from the BIA decision. So it all comes down to the question, is a finding by the IJ that these drugs were for personal use only a factual finding? And also credibility is important. The regulations. . . Yes or no? Yes, Your Honor. And the IJ has evaluated the credibility of this man in a way differently than I think I might have and has said I believe him when he says these are for personal use only. And that's very important because the regulations of the Board say they're supposed to give deference. . . The Board is to give deference to the IJ's credibility findings unless they're clearly erroneous. And, again, even though the judge didn't make a specific finding saying I find him credible, she said that, again, on that same page, I cited AR 88, she went on and on saying that the petitioner responded testify, testify. So there was an implicit finding. I didn't think we could have implicit credibility findings in the context of the regulations. I thought credibility determinations had to be explicit. Well, again, but. . . The average credibility finding has to be explicit. Okay. But, again, it doesn't change the fact that the IJ is saying the respondent testified, the respondent testified, and she's not saying anything about. . . Right. But there's nothing said one way or the other about credibility. That's correct. There's nothing to defer to, actually. In terms of. . . If there is no express determination one way or the other about credibility, what is there to defer to in terms of a credibility determination? No. Well, she, again, she's weighing. . . She's saying this is what Mr. Polifox said, and this is the only evidence, the trafficking is the officer's statement, and I don't think it's enough. And. . . Right, right. And that was her finding. Right.  to which the Board had to defer. No, there wasn't a specific one. She didn't specifically. . . She didn't specifically say that's correct, Your Honor. She didn't specifically say that finding. Well, our law as to credibility findings is that if the IJ specifically makes an adverse credibility finding, then it's adverse. If the IJ says nothing, that is a credibility finding. That is a finding of credibility. So we require that an adverse credibility finding be explicit. We do not require if it goes the other way. Right. Only we find, we construe what the IJ did as finding an adverse credibility only when it is explicit. In the absence of an explicit adverse credibility finding, we conclude that the IJ found the person credible. Now, that's the basic rule in asylum cases. Right. I'm not sure whether that rule applies here. I was just going to ask. That's the question I was going to ask. Is there a case that talks about when there is an evidentiary hearing about the nature of a crime, what the standard is for making it a credibility determination? I'm not. . . I'm not sure we have. I'm not aware. . . Yeah, I'm not aware that there is one. Well, I just asked that question because you said that the BIA has to defer to the adverse credibility determination. I'm not sure whether there is one here. Well, the regulation is facts determined by the IJ, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the IJ are clearly erroneous. The problem is there is no finding. I guess I'm just saying. Well, there is and there isn't. There's a clear finding, at least as I read what the IJ concluded. There's a clear finding by the IJ that these drugs are for personal use only. Right. And that's, of course, the testimony of the Petitioner. Yes. So, I mean. . . And I think the IJ, and I think this is a very important point, the IJ has been reluctant to conclude their sales based only on the police report. Again, we need more. . . What I think is going on here is that the IJ is very sympathetic to this person and the BIA is not. Right, right. Yeah, so it all comes down to whether the BIA is bound by the conclusion reached by the IJ, whether it's a factual finding or whether it's a conclusion. That's the difficulty I'm having in trying to characterize it as a finding or a conclusion. I don't know. It seems like a mixed question. Right. It's a very fine distinction. What was he charged with? And what did he plead to? I think he. . . Transportation. I'm looking at 452 or so in the record. Right. There were four counts. Right. Hopefully I can put that in 11379. It was transportation. That's count one, the crime of transportation of a controlled substance. Correct. And violation of health and safety code section 11379A. Right. And I think the complaint mentioned transportation. The complaint, the charging document, none of the conviction documents mentioned sales. And that was the judge's point also. So that was just transportation. And then other counts are unlawful possession of the purpose of sale. Right. Not convicted of those. Right. So the only one was count one. Right. The respondent is convicted of sale, transportation, and controlled substance in violation of California health and safety code 11379A. You said sale and transportation. Well, it's a divisible statute. The statute is. . . Is it a disjunctive? Yes. Sale or transportation.  And he got convicted. According to the conviction documents. . . And what does the allocution say? I'm sorry, Your Honor? The allocation that the judge took. Because the conviction documents only established transportation, the judge refused to give much weight to the police officer's testimony, the police report. When the defendant pleaded guilty, did the judge try to find out what the basis of the plea was? I'm not aware of that, Your Honor. Does this have like an abstract? Right. We know that the conviction documents established transportation, nothing more. And the police report was not part of the conviction documents. Right. And we're told by the IJ. . . It was extraneous evidence. So what was the evidence before the IJ? The evidence. . . Well, the Department of Homeland Security introduced the police report, which gave the officer's opinion as to what Mr. Palafax was doing with this drug paraphernalia. And then did the defendant testify? In immigration court, yes. And he testified what he was doing. He said this was his brother's paraphernalia and he wasn't involved in any sales. But the point is that that was disbelieved. That was. . . It was believed by the IJ. . . Right. And disbelieved by the BIA. That's correct. Even though they didn't specifically say they disbelieved him, they basically did conclude that, in their opinion, he was involved in sales. It was always the presumption from what he carried. That's right. That was the board's opinion. Counsel, may I ask you, did the IJ apply the factors outlined in Matter of Frantescue. . . I. . . Yes, she did, Your Honor. She found that because, again, because the police report was not part of the conviction record. . . Well, point me to, in the IJ decision, where the Frantescue factors were discussed. Okay. It starts at AR 74. So, where is that K cited in the IJ decision? Okay. It would be on, unless I. . . It would be on either 78 or 79. If you did. . . Don't see it. Don't see it. Okay. Well. . . That's when I see the difference between the two determinations is the BIA. The IJ applied the factors that had been outlined in its case, Matter of Frantescue, to determine whether or not the crime constituted a particularly serious crime. And the IJ did not do that. But the IJ did cite Matter of NAMs on 79 and Anaya Ortiz, which holds that all relevant evidence, reliable evidence, I'm sorry, may be considered. And she didn't feel the police report was sufficiently reliable to deport the petitioner. What did the BIA say about that? Well, they had a contrary. Because they applied a different. . . They applied a different ruling from the BIA that the IJ did not apply. That's the problem I'm having with saying that it was impermissible fact-finding, because I think the BIA was of the view that the IJ did not apply the appropriate governing case. Well, I don't know if that makes a difference. I'm looking at AR-3. They cite Matter of Frantesco. They're talking about the nature of the events, the circumstances, and underlying facts of the crime. I think that the difference is how much weight they gave to that police report. That's where I think the difference is, and that's where they reach different conclusions and read the facts differently. Okay. We've taken you slightly over time. Let's hear from the government, and then we will give you a chance to respond. Thank you, Your Honor. Good morning. May it please the Court. William Minnick representing the Respondent. The Court does have jurisdiction over petitioner's claim of improper fact-finding. But it should conclude that the claim is actually an attack against how the Board weighed the evidence, which it is permitted to do in the context of a discretionary decision. And the Court should ultimately conclude that it does not have jurisdiction to reach petitioner's claim of how the Board weighed the evidence. As a general principle, that's not the case. So just so I understand your argument. So are you saying that the Court doesn't have jurisdiction to review whether or not the particularly serious crime determination was properly made? The way you worded that seemed to me to be very – that you intentionally worded it that way. So I'm trying to find out what your view is on what the extent of our jurisdiction is when we're looking at the particularly serious crime determination. What the Court does have jurisdiction over is whether the Board properly applied the correct legal standard and whether it applied its regulation. In other words, if the Board did conduct improper fact-finding contrary to the regulation, that is an argument the Court has jurisdiction to reach because it's a legal conclusion. Okay. This is kind of a developing area of the law, and I will readily admit I'm confused. I thought that recently we had a decision in the Ninth Circuit that said we can – we can review for abuse of discretion the determination that a particularly serious crime has been committed. Do you agree with that? Yes, I do, Your Honor. That's true as a general matter. And, of course, in this case, he has been convicted of an aggravated felony, so the criminal review bar of 1252 applies. So in this case, the Court does not have jurisdiction over abuse of discretion claims, such as how the Board weighed the evidence. Okay. I'm looking at – now I'm confused. Sorry. Judge Graber just wrote a decision saying that it's not reviewable in this Court once the BIA has determined that it is a particularly serious crime, just as it's not reviewable in this Court whether or not there's been an aggravated felony and whether to deport on that basis. Is that the Pachecoff case, Your Honor, that you're referring to? Yes, Your Honor. So it's reviewable if there's an error of law. Let's say if the wrong standard has been applied. Yes, sir. It's reviewable if the fact-finding is wrong. Yes, sir. But unless you can get at it, for example, that the BIA was not entitled to do the fact-finding that it did, you can't otherwise review it. That's not my understanding. If it's a particularly serious crime, it doesn't aggravate my understanding. And I admit that my understanding is not crystal clear. But I thought the distinction was if the particularly serious crime is an aggravated felony, then unless you have a constitutional bar, a constitutional issue or a question of law, then the bar is still in effect. If a particularly serious crime is not an aggravated felony, then it's reviewed for abuse of discretion, whether or not the particularly serious crime was properly imposed. So I don't know. I think I understand now where the confusion lies, Your Honor. Typically in these cases, there's one crime, and it's, you know, either an aggravated felony or a particularly serious crime. In this case, there are two crimes. There was the 1990 conviction that was the basis for his removal order. It was a possession for sale of cocaine, 1990 conviction. That was the basis for his removal order, and that's an aggravated felony. And that's why the criminal jurisdiction bar applies to legal and constitutional claims. But the second crime. It's a particular. That's a different bar, particularly serious crime bar, right, which is separate than the aggravated felony bar. It's the second crime that the dispute is whether it's a particularly serious crime in this case. So I think it's because the second one, the 2006 conviction for transportation of methamphetamine is not an aggravated felony. The reason the criminal bar applies is because of the 1990 possession for sale of cocaine conviction. The 2006 transportation of methamphetamine conviction, it's not an aggravated felony. But the criminal alien bar does apply here because he does have an aggravated felony. But the aggravated felony, would that keep him from getting withholding of removal? Well, that 1990 possession for sale of cocaine conviction does not preclude him from getting withholding of removal, and the reason for that is addressed in Respondent's Brief at page 604. So that 1990 conviction doesn't bar him from withholding, but the significance of that conviction is that because it is an aggravated felony, it limits this Court's review to questions of law or constitutional claims. But why would, then, would we use abuse of discretion? Why would we use the abuse of discretion standard of review in our decisions talking about reviewing the particularly serious crime determination? That can't be right if we can only review for constitutional claims because those are reviewed de novo. In those cases, Your Honor, he wasn't. In those cases, the Petitioner wasn't convicted of an aggravated felony. It's like Delgado, I think, is the case, and Arbid is another case. Each of those were particularly serious crime cases, but he wasn't convicted of an aggravated felony, so the Court's jurisdiction was limited. But here's the problem I'm having with that argument, is the aggravated felony is not in play right now. Because if you're talking about withholding of removal, the aggravated felony is not the one that you're talking about. You're talking about the particularly serious crime determination. So the aggravated felony bar is not the one we're looking at. We're looking at the particularly serious crime bar at that point. Well, it's the 1990 aggravated felony is in play to the extent that it limits this Court's jurisdiction, but it's not what this case is about. So it's not. I'm totally confused. Can you help me? Yes, sir. 1990, there is a conviction for an aggravated felony, right? Yes, sir. Ten years later, there's an order of removal. In connection with that order of removal for the 1990 felony, the immigration judge says no because there's a disability involved here. That makes him a member in a particular social group, using the statutory terminology, and we're going to withhold removal. Then along comes this trafficking crime in 2006, and here is where the fog starts to penetrate my mind. What is the relationship of what's going on in 2006 to the 1990 conviction? Well, the 2006 conviction renders the petitioner ineligible for withholding of removal. If he had that conviction before. Because he committed another serious crime? Well, specifically because he committed a particularly serious crime. Well, it renders him ineligible for withholding if it is a particularly serious crime. Right. And we review that for abuse of discretion, don't we? And that's what the remanded proceedings were all about. Exactly. Whether it was a particularly serious crime. It's a particularly serious crime, but it's not an aggravated felony. It's not an aggravated felony. Right. Maybe I can help. So we get the first crime that makes him removable. Yes, sir. And he's not entitled to cancellation of removal. Right. But he is entitled to withholding of removal unless it's a particularly serious crime. Right. So the first one is not a particularly serious crime. But he's now at the stage where he has an order of removal. Right. And he's got withholding of removal because it wasn't a particularly serious crime. If he commits later a particularly serious crime, that lifts his protection from withholding. So the question is whether or not this is a particularly serious crime. And if it's a particularly serious crime and properly determined to be so, his protection by the withholding order is gone. That's correct, Your Honor. That's the sequence. Okay. The only fog I still have in my mind is I think you're saying that because there was an aggravated felony sometime in the past, that bar carries over to prevent us from reviewing the particularly serious crime determination. And I don't think our case law says that. I think our case law says the aggravated felony bar is separate and apart from the particularly serious crime bar. And we look at the particularly serious crime bar under abuse of discretion. We don't go back, reach back and get the aggravated felony bar that we used for cancellation of removal in asylum proceedings and carry that over into the withholding proceedings. That's what I think our case has said. I think in Pachenkov, though, the court did say that in that case there was one crime and it was both an aggravated felony and a particularly serious crime. I think what Pachenkov says is that the aggravated felony criminal alien bar in 1252A2C, although normally a particularly serious crime is reviewed through abuse of discretion, when the criminal bar applies, the court lacks jurisdiction. Right. I can agree with that. But what if there are two separate crimes? One is an aggravated felony, as we have here. The first is an aggravated felony. The second one is not an aggravated felony, and we're looking at the particularly serious crime bar. What's your view on what our jurisdiction is at that point? Oh, is Your Honor asking because the second crime is not an aggravated felony, does 1252A2C apply to the court's jurisdiction reviewing a determination with regard to that? Right, right. It does, Your Honor. Why? When you say C, you mean the aggravated felony bar applies? That's the C, right? Yeah, the criminal jurisdictional bar. Yeah. I don't know that I agree with that. I think it's the particularly serious crime bar that we're looking at and not the aggravated felony bar at that point. Otherwise, the Pachinko decision doesn't make sense because it talks about reviewing for abuse of discretion the particularly serious crime determination or ARBIT, one of those, Delgado. They're all running together. I think it's Pachinko. No, I think you're right. I mean, I read these cases, and that's the only way I can make sense of them, is that they segment out the aggravated bar, the aggravated felony bar, which strips us of jurisdiction from the particularly serious crime bar, which we have abuse of discretion to review. Otherwise, why would that language be in there about abuse of discretion, standard of review? Well, because in those cases, the criminal bar didn't apply to those cases. Right. Okay. But let me – maybe I can cut to the chase. I'm not sure we have – I think that Pachinko says that if it's an abuse of discretion by the BIA to conclude that this is a particularly serious crime, we have jurisdiction to review the abuse of discretion. But that's not the argument that's being made to us. The argument that's being made to us is that the BIA violated its own regulations by refinding facts made by the – that have already been found by the IJ. But that's the argument that's made by Petitioner. The government is arguing we don't have jurisdiction, though. But it's clear that we have jurisdiction over the question as to whether or not the IJ's fact-finding has been unduly interfered with by the BIA. We do have jurisdiction over that point. I agree with that. But I think he's saying that once we get past that hurdle, we're done. We can't look at whether or not the determination of particularly serious bar was correctly made. And I don't think that's true. That is our argument, Your Honor. We would just rely on Pachinko for that. Well, if we were to conclude, and I say if, if we were to conclude that the BIA improperly found facts already found by the IJ, and if we were to conclude, for example, that a finding of fact that these drugs were for personal use only, that has to stand, and that the BIA de facto found differently, and we were to remand to the BIA, saying you have to conclude, as the IJ concluded, as a matter of fact, that these drugs were for personal use only, at that point the BIA has to say, well, possessing or transporting drugs for personal use only is a particularly serious crime, which the BIA has not done, as I read that order. If the BIA then says, okay, well, he possessed them for personal use only, and we find that that's a particularly serious crime, I guess we can review that decision for abuse of discretion. You agree with that? You agree with that sequence? I agree with the sequence. I don't agree that if they decided possession is a particularly serious crime, I don't agree that in a future petition for review, the Court would have jurisdiction to review the merits of that determination. The Court could say it applied the wrong legal standard, but it can't get to the merits. Could we review it for abuse of discretion? Not in this case, Your Honor, because the criminal bar would still apply to limit the court's jurisdiction to legal and constitutional rights. But in a way we don't need to get to that at this point. If what we do is say, listen, the BIA has improperly found facts, the BIA has to accept the fact finding of the IJ that these drugs were for personal use only, and we remanded the BIA to say, okay, you can tell us one way or the other whether this is a particularly serious crime, but you have to conclude, as the IJ did, that this was for personal use only. If you found it, if you did find that the Board improperly found facts, you could remand it for the Board to properly apply the regulations and the standard of review. Well, let me ask you this, and I don't know what we're going to decide, but what if we decide that the Board did not impermissibly engage in fact finding, that the Board did not impermissibly engage in fact finding, then would we be able to review the Board's determination that there was a particularly serious crime committed? No, Your Honor. Why not? For Pachenkov. Because we know that such a claim presents an abuse of discretion claim to the court. That's what Arvid says. And we know from Pachenkov that in a case such as this, where the applicant has been convicted of an aggravated felony, that the court lacks jurisdiction to intervene in abuse of discretion. So that's my problem with your argument. I think you're going back and trying to bring the aggravated felony bar back into govern the particularly serious crime determination, and I don't think Pachenkov says that. I'm struggling with that. Abuse of discretion doesn't mean that to me. If we're reviewing for abuse of discretion, it can't be true that there is a bar that strips us of jurisdiction, while at the same time saying we have reviewed for abuse of discretion. That just doesn't compute to me. Your Honor, I can see my time has expired. No, no, keep going, keep going. You get to talk until we understand it. We may be here until tomorrow. It's just, I mean, we may have to figure this out after Arvid. Well, I wanted to get this point in. It doesn't address the jurisdictional claim, but I wanted to explain why it's the government's view that what the board did was to properly reweigh the evidence as opposed to find facts. And I'd like to point out that in the immigration judge's decision, and this is record at 80, the immigration judge did not make an explicit finding that the drugs were for personal use. The immigration judge never says record at 80, I find that the drugs were for personal use. He did not affirmatively make that finding. The only finding the immigration judge made was that there was not enough evidence to support a conclusion of drug trafficking. I would say that that's different than affirmatively finding as a matter of fact that the drugs were for personal use only. Well, he says that the government had failed to establish by preponderance of the evidence that a respondent's conviction constitutes a particularly serious crime. And then he goes on to attack the reliability of the police report, illustrating it from time to time by testimony of the defendant. It's a she, actually. Yes. I'm sorry. And again, the point I would like to make is that you know, I disagree with your characterization. I'm just reading the long paragraph that's toward the last full paragraph on AR-80, and it's a long paragraph in which he kind of goes through. Police report indicates it was police trafficking. But obviously the I.J. disagrees with it. He says, first, although the police report indicates that the respondent was found with multiple substances in plastic bags, the respondent explained he purposed the drug from a drug dealer immediately prior to his address. Therefore, the court finds the arresting officer's statement as to the packaging is not determinative as to the intended use of the drug. As it appears from his testimony, they were packaged by the drug dealer, not by the respondent. Second, police reports indicate that the quantity was such that they appeared to be more than for personal use. And the report further indicates the respondent was in possession of three types of the controlled substances when he was arrested. However, respondent testified he purchased the drugs for personal use, and there is insufficient detail in the report regarding the quantity to support a finding that respondent intended to sell the controlled substances. Third, although respondent had in his possession a digital scale in empty plastic baggies, implements typically associated with drug trafficking, respondent testified that the scale and plastic baggies belonged to his brother. Moreover, the court notes that although he was charged for possession and sale, he was also not convicted of that sale based on the foregoing, doesn't believe he was involved in drug trafficking. Well, if he's not involved in drug trafficking, I think it's a binary world. Either he's involved in drug trafficking or it's for personal use. I mean, that's the clear import of what I just read. That's the import to me. He's either involved in drug trafficking or he's doing it for personal use. He concludes the evidence doesn't establish that he was involved in drug trafficking. Boom. How do I – why am I making a mistake? Well, I think it's a subjective – I think it's a subjective way to look at the record, you know, each way. I mean, I understand where you're coming from. No, don't tell me this is subjective. Tell me where I'm making a mistake. You're not making a mistake, Your Honor. But – So am I right then in concluding that the IJ did conclude that this was for personal use only? Well, I think there's a difference if the IJ affirmatively found, I find these drugs are for personal use. Or to say it this way, that the evidence does not establish that they weren't for personal use? That's, I think, a more accurate statement because he says the evidence does not establish. He says the evidence doesn't establish that there was trafficking. Right. But he does not say, I find that these drugs were for personal use. She does not say. I'm sorry, Your Honor. It wasn't she. I'm sorry, Your Honor. Unless Rose is a man. I think that's an important distinction. The Court might disagree with that, but I think it's important to draw the distinction that what the immigration judge said, he was evaluating the evidence to say, as a conclusory matter, that there wasn't enough evidence to support a finding of drug trafficking. He didn't find affirmatively that the drugs were for personal use. It's a difference like saying not guilty as opposed to innocent, in a way. Yes, I think that's right. But does it make any difference that the BIA used the factors set forth in Frenette's view specifically and the IJ did not use those factors? Does that make a difference in the analysis, in your view? The immigration judge did cite, on record at 79, matter of NAM. And matter of NAM holds that the board or the immigration judge applies the Frenette's view factors. So I would say that a citation to NAM is a citation to Frenette's view. And he also cites YAL, which is kind of the same stuff. Can I ask you this in sequence of events? The BIA decision remanding the immigration judge is on page 138. That's dated March 20, 2009. The decision to which you just referred by the immigration judge is dated July 29, 2009. So I infer that that's the decision following remand. And then there's another decision of the BIA which finds, notwithstanding the decision of the IJ, that it is a particularly serious crime. Where is that in the record? The board decision that we are reviewing. That's record at 2. Page 2. Just one more point about the weight that the board afforded the police report and why there was our position is that there was no factual finding. The immigration judge essentially said the officer said it appeared to him that the drugs were more than for personal use, but the quantity is not in the record. So that's not enough for me. The board said, just like the immigration judge did, that the officer said in the police report that it was more for personal use. The quantity is not in the record. But that is enough for us. And it's that last clause that the immigration judge said it wasn't enough for her. But the board said that is enough for us considering all the other factors. It's our position that that's why it's a proper exercise of the board's discretionary review to weigh the evidence. And it's not a proper fact finding. And the board can re-weigh the evidence. What case says that, that the board can re-weigh the evidence that was found by the IJ? It is the case that the board cites at the end of its decision in the footnote. It's record at 4. It's a matter of ASB. And it says, in determining whether the established facts are sufficient to meet a legal standard, the board is entitled to weigh the evidence in a manner differently from that accorded by the immigration judge. The board, the language isn't cited by the board in this decision, but that's what that case says. And this court has ---- Yeah, we're fairly familiar with the board doing this in the sense that if you take the facts and the IJ, for example, attaches certain importance to the facts, and the BIA says, well, we don't question that those are the facts, but we think that this factor is actually much more important than the IJ thought it was, the BIA is clearly entitled to do that. I mean, that's exactly what it does. While we find this ---- I'm reading from the BIA decision on page 3. While we find no clear error with respect to the immigration judge's fact-finding, in applying Frentescu, we ultimately disagree with her conclusion that the respondent's crime was not particularly serious. And then the BIA goes through all the things that were found on his person and concludes at the end of it, we disagree with the immigration judge's conclusion that this factor undermines the officer's observation that the quantity was so great as to suggest that the drugs were not for personal use, particularly in light of the other items seized during the arrest. Instead, we find that the facts surrounding the arrest and the statute under which the respondent was convicted established that he committed a particularly serious drug offense, posing a significant danger to the community. So the offense was carrying the various drugs, the glycine envelopes of the scale, and that constituted trafficking, and in the view of the BIA, constituted a particularly serious crime. If we disagree with that conclusion, we're nevertheless bound by it, right? It's not up to us to agree or disagree. We have to defer. Because again, our position is that under Pachenkov, the court lacks jurisdiction to reach the merits of that claim. So here, the BIA is saying, look, I understand that the defendant said it's not for sale, it was intended for personal use. It doesn't make any difference, according to the BIA, as long as he has all this paraphernalia on him, that makes it a particularly serious crime. That's correct, Your Honor. Just to make clear. I disagree, but I'll let you answer, and then I'll interject. I just wanted to make clear that it doesn't have to be a drug trafficking crime for the crime to be particularly serious. If it is an aggravated felony drug trafficking crime, then it is particularly serious under matter of Y.L., but if it's not a drug trafficking crime, it can still be particularly serious. And carrying all this stuff is what's particularly serious? Exactly, Your Honor, because the under Francescu, the board is supposed to consider the facts and circumstances surrounding the crime. So if he was convicted of transportation, even if it wasn't a drug trafficking crime, transportation can be particularly serious if, you know, dot, dot, dot, all the factors that the board lists in this decision. Okay. But here's my problem with that, and I'll just read the sentence. I mean, we're playing with the same language. BIA says, We disagree with the IJ's conclusion that this factor undermines the officer's observation that quantity was so great as to suggest the drugs were not for personal use, particularly in light of the other items seized during the arrest. I view the BIA as saying, We do not believe that this was for personal use. And because we don't believe that it was not for personal use, we find it a particularly serious crime. So it all comes back to the, in a sense, maybe misleadingly, but in a sense, simple question is, is a finding that personal use, is that a factual finding or not? And the BIA seems to think it was for personal use. The IJ seems to think not. Is that a fact? And again, I know I'm repeating myself, but our view is that the immigration judge didn't affirmatively make a finding that the drugs were for personal use. And what the board did was reweigh the evidence to determine that, although, you know, not a drug trafficking crime, but transportation of methamphetamine with these factors, that that is a particularly serious crime. I got it. Okay. Any further questions from the bench? Thank you. Thank you, Your Honor. A heroic effort to educate a particularly ignorant center of the bench person. And colleague. I do not defer to the point of ignorance. Please go ahead. Let's start out with giving you a minute. But this is a hard case. I thought Judge Rawlinson made a very excellent point about the jurisdictional question. Thank you. Does the court lack jurisdiction to review the court's finding because of an aggravated felony that took place and occurred in 1990? Whereas the subject of this petition for review has nothing to do with that. That's a very important question, Your Honor. And I would maintain, not surprisingly, that the panel does, of course, have the jurisdiction. And the first argument in my opening brief was the board erred in their conclusion that the petitioner had been convicted of a particularly serious crime. That's on the other point I wanted to make. And even if there's no jurisdiction, I would argue this question is so important that it would be relevant in the scope of a constitutional legal question. Again, deportation, as I've said many times when I've argued before in my search, is a very severe sanction. Is it permissible to deport someone because of the conjecture of a police officer? Again, he was not convicted of sales. That's why it wasn't an aggravated felony. According to the conviction records, it was transport. Is it permissible to deport someone from the United States based on the police officer's  If the BIA is saying that having in your possession and moving it around on a motorcycle all these artifacts of drug use and drug sale is a particularly serious crime, is that permissible? Well, he wasn't convicted of that. Forget about the intent. Yes. Forget about whether it's intent to use or intent to sell. But just looking at the array of drugs and materials that were on his person and moving it for either use or not, it's still trafficking, and the BIA concluding that's a particularly serious crime. Is that within its discretion? I would say not because he wasn't convicted of trafficking. They can say it looks like he was doing this. Transportation. Yes, it looks like he was involved in no good with this paraphernalia, but that's not what he was convicted of. Again, we could very well sit here and say, look, you have the officer. You know, he might very well be correct in his supposition and his opinion of what Mr. Palafax was doing. But again, is that enough to deport someone from the United States when he wasn't convicted of trafficking? Okay. Thank you very much. Thank you. Thank both sides for their arguments. Paris, Palafax submitted for decision.
judges: Hellerstein, Fletcher, Rawlinson